LAW OFFICES
**MANOLIO & FIRESTONE, PLC**
8686 East San Alberto Drive, Suite 200
SCOTTSDALE, ARIZONA 85258
(480) 222-9100
lfuentez@mf-firm.com
Merrick B. Firestone, SBN 012138
John C. Shorb, SBN 023995
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ELIZABETH QUEENIN, a married woman;<br><br>Plaintiff,<br><br>v.<br><br>RANDSTAD GENERAL PARTNER (US) LLC, a Delaware limited liability company;<br><br>Defendant. | NO.<br><br>**COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)** |

Plaintiff Elizabeth Queenin ("Queenin"), for her cause of action against Defendant Randstad General Partner (US), LLC ("Randstad") allege as follows:

## **PARTIES AND JURISDICTION**

1. Queenin is a married woman and resident of Maricopa County, Arizona who, individually, was employed by Randstad. Queenin's husband was not an employee and, therefore, has not been named as a party to this lawsuit.

2. Upon information and belief, Randstad is a Delaware limited liability company with its principal place of business in Fulton County, Georgia.

3. The acts, events or transactions that form the basis of this lawsuit occurred in Maricopa County, Arizona.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the acts or omissions giving rise to the claims at issue occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Queenin's Relationship with Randstad

6. In or about November 2014, Queenin was hired by Randstad as an Area Vice President, Randstad Inhouse Services for its Arizona District.

7. Randstad is an employment and recruiting agency for temporary and permanent staffing.

8. Queenin's job duties at Randstad included managing a team of up to nine Site Managers, overseeing all service delivery, personnel management, P/L management, and new business development.

9. While at Randstand, Queenin was tremendously successful. Among others, Queenin:

    a. Added three new clients that were expected to generate millions of dollars for Randstad;

    b. Increased revenue by twenty-two percent (22%), year over year;

    c. Increased gross margin by thirty-eight percent (38%), year over year; and,

    d. Increased contribution operating profit by twenty-five percent (25%), year over year.

10. Queenin's revenue increases were despite a decline in headcount with a key client resulting from a decrease in available client space and the conversion of call center representatives into client employees.

11. Queenin further repaired Randstad's fractured relationship with a client's key decision maker, resulting in the decision maker's department using Randstad exclusively after previously ceasing use of Randstad due to poor performance levels prior to Queenin's tenure.

12. Beyond the financial metrics, Queenin was lauded by her employees, receiving the highest score of any of the managers in her region, as well as her supervisor, who consistently praised Queenin's work ethic and productivity.

13. Queenin's compensation at Randstad, in addition to benefits, included a salary and bonuses. Queenin's success and profitability for her district created numerous bonus opportunities for her in the future.

## Queenin's Injury, Leave
## Pursuant to the Family Medical Leave Act ("FMLA")
## and Termination

14. In or about February 2016, Queenin unexpectedly required an emergency surgical procedure for a serious health condition that required continuing treatment after the surgery.

15. Queenin requested and Randstad granted Queenin leave pursuant to FMLA through May 18, 2016.

16. While on leave, Queenin continued to be contacted by her staff and supervisor at Randstad to, among others, consult with Queenin regarding a new site manager candidate, client specific issues and personnel updates.

17. Randstad hired a minimum of two new employees within the Arizona District while Queenin was on leave.

18. Queenin was scheduled to return to work, after being released by her treating physician, on Monday, May 16, 2016 and prior to the expiration of her FMLA leave.

19. On Thursday, May 12, 2016, Queenin was contacted by Kim Lockhart, her immediate supervisor and the senior vice president in charge of the Texas and Arizona Region.

1 At that time, Ms. Lockhart informed Queenin that she was being terminated because several positions within Lockhart's region were being eliminated.

20. In a subsequent conversation with Debbie Wisniewski, a Randstad Human Resources Manager, Queenin was told that there was not enough revenue to justify headcount with the Arizona District and she confirmed that the employment decision was not performance based.

21. Randstad, upon information and belief, did not terminate any other persons in the Arizona District, including the two new employees that were hired while Queenin was on FMLA leave.

22. Queenin also understands and believes that Randstad disbursed her job duties to the new and existing employees within her district and to other employees in Texas.

23. When the inconsistencies with Randstad's allegations of insufficient revenue were brought to its attention, Randstad manufactured allegations of "performance" issues, in a bad-faith attempt to justify Queenin's termination.

24. Queenin, to be sure, was never disciplined, admonished, coached, or otherwise criticized for her job performance.

25. To the contrary, Ms. Lockhart regularly complimented Queenin for her hard work and dedication, stating that she only wished that she had more employees like Queenin, or words to that effect.

## COUNT I

## UNLAWFUL INTERFERENCE

## FMLA, 29 U.S.C. § 2615(a)(1)

26. Queenin incorporates each and every allegation in the foregoing paragraphs as if set forth fully herein.

27. Randstad, an employer that employed, at the time of Queenin's leave and upon information and believe, in excess of 5,000 employees and in excess of fifty (50) employees

1  within seventy-five miles (75) of Queenin's worksite, is a covered employer pursuant to FMLA.

28. Queenin is, and at all times relevant hereto was a "covered employee" pursuant to FMLA and was, thus, eligible for FMLA leave: Queenin (1) worked for a covered employer; (2) worked for more than twelve months and more than 1,250 hours at Randstad prior to taking leave; (3) worked within seventy-file miles of at least fifty (50) Randstad employees; and, (4) suffered a serious health condition that required continuing treatment and made her unable to perform her job duties at Randstad.

29. In or about February 2016, Queenin requested and was granted a medical leave of absence by Randstad up to May 18, 2016, because of her health condition.

30. In or about May 2016, Queenin advised Randstad that she would be able to return to work in advance of the end of her leave.

31. Randstad, in bad faith and in interference with Queenin's right to take FMLA leave, terminated Queenin employment while Queenin was on medical leave in violation of 29 U.S.C. § 2615(a)(1).

32. As a result of Randstad's interference, Queenin has suffered and continues to suffer damages in an amount to be proven at trial, including for lost compensation, plus interest, pursuant to 29 U.S.C. § 2617.

33. Because Randstad's actions were in bad faith, Queenin is further entitled to liquidated damages in an amount equal to the actual damages awarded for lost compensation, plus interest, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

34. Queenin is entitled to her attorneys' fees, reasonable expert witness fees, and costs pursuant to 29 U.S.C. § 2617(a)(3).

/ / /

/ / /

/ / /

## COUNT II

## RETALIATION

## FMLA, 29 U.S.C. § 2615(a)(1)

35. Queenin incorporates each and every allegation in the foregoing paragraphs as if set forth fully herein.

36. As set forth herein, Randstad was a covered employer and Queenin a covered employee pursuant to FMLA.

37. Queenin was entitled to and was granted FMLA medical leave due to a serious medical condition up to May 18, 2016.

38. Queenin was scheduled to return to work early, on or about May 16, 2016.

39. Mere days prior to her return from work, Randstad terminated Queenin, first under the pretense of insufficient revenue (despite Queenin having been on FMLA leave for approximately three months) and then because of job performance problems.

40. Randstad's alleged reasons for the termination are nothing more than a sham. Queenin's termination was in retaliation for taking leave in violation of 29 U.S.C. § 2615(a)(2).

41. This retaliatory intent is further evidenced by Randstad's conduct in changing the stated grounds for Queenin's termination in a bad faith attempt to manufacture an excuse for the termination.

42. As a result of Randstad's retaliation, Queenin has suffered and continues to suffer damages in an amount to be proven at trial, including for lost compensation, plus interest, pursuant to 29 U.S.C. § 2617.

43. Because Randstad's actions were in bad faith, Queenin is further entitled to liquidated damages in an amount equal to the actual damages awarded for lost compensation, plus interest, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

44. Queenin is entitled to her attorneys' fees, reasonable expert witness fees, and costs pursuant to 29 U.S.C. § 2617(a)(3).

## COUNT III

## DISCRIMINATION

## AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")

45. Queenin incorporates each and every allegation in the foregoing paragraphs as if set forth fully herein.

46. At the time of her termination, Queenin was, at sixty (60) years old, the oldest employee in the Arizona District. Queenin is, accordingly, a member of a protected age group.

47. Queenin was satisfactorily performing her job responsibilities. Queenin performed exceptionally across the broad spectrum of metrics used by Randstad to measure employee performance. Further, her performance was praised by her supervisor and the employees she managed alike.

48. As discussed above, Queenin was terminated while on FMLA leave and her job responsibilities were, upon information and belief, divided among other, younger employees.

49. In the months leading up to her termination, Randstad hired, upon information and belief, a minimum of two new employees that were all considerably younger than Queenin.

50. Ms. Lockhart advised Queenin (and a Randstad human resource manager later confirmed) that Queenin's termination was not performance based.

51. Nevertheless, instead of terminating the new hires, who were not only younger than Queenin, but who had less experience with the company, Randstad terminated Queenin.

52. To be sure, Randstad's actions in hiring new employees is inconsistent with its claim of inadequate revenue to justify the existing headcount.

53. Randstad's actions are and were discriminatory in violation of the ADEA.

54. Queenin has exhausted her administrative remedies with the U.S. Equal Employment Opportunity Commission.

55. As a result of Randstad's discriminatory conduct, Queenin has suffered and continues to suffer damages in an amount to be proven at trial, including for lost compensation.

56. Queenin is further entitled to the recovery of punitive damages, as well as attorneys' fees and costs.

## JURY TRIAL DEMAND

57. Plaintiff hereby requests a trial by jury for all counts of this Complaint.

WHEREFORE, Queenin prays that this Court enter judgment against Randstad as follows:

   A. For compensatory and consequential damages in an amount to be proven at trial;

   B. For punitive damages in an amount to be proven at trial;

   C. For pre- and post-judgment interest at the maximum rate allowed by law;

   D. For Queenin's reasonable attorneys' fees, expert witness fees and costs incurred herein; and

   E. For such other relief as the Court deems just and proper under the circumstances.

Dated this 7th day of September, 2017.

**MANOLIO & FIRESTONE PLC**

By   /s/ John C. Shorb
     Merrick B. Firestone
     John C. Shorb
     8686 E. San Alberto Drive, Suite 200
     Scottsdale, Arizona  85258
     *Attorneys for Plaintiff*